## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-611-GW(JCGx) | Date | April 24, 2014 |
|---|---|---|---|
| Title | *Alejandro Alers, Sr. v. Bank of America, NA* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Alejandro Alers, Sr. | Erin Saeko Kubota |

**PROCEEDINGS:    DEFENDANT'S MOTION TO DISMISS [12]**

Counsel for plaintiff makes an appearance with the clerk. Case is called and Mr. Alers is not present.

The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion is GRANTED. Counsel for Defendant will file a proposed order forthwith.

                                                :    08

Initials of Preparer    JG

***Alers, Sr. v. Bank of Am., N.A.,*** Case No. 2:14-cv-00611 GW (JCGx)
Tentative Ruling on Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim
Under FRCP 12(b)(6) following supplemental briefing

On March 27, 2014, this Court issued an "Order re Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Under FRCP 12(b)(6)" ("the Order"). Docket No. 18. The Order indicated that virtually all of Plaintiff's Complaint was barred by application of *res judicata* due to the resolution of earlier state-court litigation between the parties. It also invited further briefing concerning whether or not the few remaining acts that at least appeared to fall outside of *res judicata*'s reach[1] would be sufficient to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Complaint ¶¶ 19, 30. In that supplemental briefing, Bank of America, N.A. ("Defendant") advanced several reasons why the remaining allegations advanced by Alejandro Alers, Sr. ("Plaintiff") could not suffice in that regard. For purposes of the final resolution of this motion (and of this case), the Court need consider only Defendant's *Noerr-Pennington* argument.[2]

"The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). That right to petition "includes access to courts, [such that] the Supreme Court extended the doctrine to provide immunity for the use of 'the channels and procedures of state and federal courts to advocate causes." *Id.* at 644 (omitting internal quotation marks) (quoting *Sosa*, 437 F.3d

---

[1] The Court observed that there appeared to be a conflict between Ninth Circuit and California state court decisions with respect to whether events occurring after the filing of the earlier lawsuit could still be considered barred by *res judicata* due to resolution of that earlier lawsuit. *Compare Allied Fire Protection v. Diede Constr., Inc.*, 127 Cal.App.4th 150, 155 (2005), with *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees & Restaurant Employees Union, AFL-CIO*, 215 F.3d 923, 928 (9th Cir. 2000). Regardless of the resolution of those apparently-conflicting decisions, the outcome here would be the same, for the reasons addressed *infra*.

[2] The standards applicable to a district court's consideration of a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure are discussed in the Order and, the parties being familiar with that ruling, are incorporated herein by reference. *See* Docket No. 18, at 3-4.

1

at 929-30). *Noerr-Pennington* immunity can extend to RICO claims. *See Sosa*, 437 F.3d at 932-33.

There is a "sham" exception to the *Noerr-Pennington* doctrine "developed to prevent the immunization of conduct that used 'governmental process...as an anticompetitive weapon.'" *Kearney*, 590 F.3d at 644 (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)). "The Ninth Circuit has held that a defendant's activities may fall into this exception if they include making intentional misrepresentations to the court that then 'deprive[s] the litigation of its legitimacy.'" *Id.* (quoting *Kottle*, 146 F.3d at 1060). Before reaching the sham exception question, however, for the conduct to be potentially immunized, Plaintiff's lawsuit must impose a burden on Defendant's petition rights, the Defendant's alleged activities must constitute protected petitioning activity, and the Court must determine whether the statutes at issue may be construed to preclude that burden on the petitioning activity. *See id.* These inquiries are separate from the sham exception analysis. *See id.* at 645-46.

There is little question that Plaintiff's RICO claim, focused as it is now due to the Court's *res judicata* ruling in the Order, would burden Defendant's petitioning rights. *See Sosa*, 437 F.3d at 932-33. It specifically targets Defendant's lawyers' conduct in connection with a summary judgment motion they brought in the earlier state court proceeding. *See* Complaint ¶¶ 19, 30. That conduct also plainly fits within the category of protected petitioning activity. *See Kearney*, 590 F.3d at 646 (describing conduct at issue in that case as not "petitions in and of themselves" because "they are not complaints, answers, counterclaims, or pleadings which make representations to the court"); *Sanders v. Brown*, 504 F.3d 903, 912 (9th Cir. 2007) ("*Noerr-Pennington* immunity protects private actors when they file court documents...."); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("*Noerr-Pennington* immunity, and the sham exception, also apply to defensive pleadings, because asking a court to deny one's opponent's petition is also a form of petition; thus, we may speak of a 'sham defense' as well as a 'sham lawsuit.'"); *id.* ("A complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept.").

2

Finally, Plaintiff has not advanced any reason for how or method by which RICO could be construed to preclude the burden on petitioning activity Plaintiff's allegations would effect. *See also Sosa*, 437 F.3d at 939-42.

The only remaining question, therefore, is the "sham" exception to *Noerr-Pennington* immunity. Paragraphs 19 and 30 of Plaintiff's Complaint assert that Defendant's lawyers in the earlier litigation knew about the forgery and embezzlement Defendant's bank teller committed, but misrepresented facts concerning those events by:

> refus[ing] to disclose to the [state] court in its SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION, January 16, 2013 the facts that Bank Teller No. 10 had forged check (#1025); Bank Teller No. 10 embezzled $4,500.00 from Plaintiff's checking account; and Defense Counsels [*sic*] manipulated Defendant's Disclosure Agreement, redaction of the first paragraph of the "Returned Items" section, so that the Disclosure Agreement would fit the facts of this case.

Complaint ¶ 19; *see also id.* ¶ 30.

Obviously those allegations fit the "sham" exception's requirements for alleged intentional misrepresentations to the court, at least within the confines of Rule 12(b)(6) review. However, as Defendant points out, even if Plaintiff's allegations in this regard are accepted as true, the context in which Defendant is alleged to have proffered the falsehoods – in support of its summary judgment motion – would not have "deprive[d] the litigation of its legitimacy," because these were purportedly false assertions/omissions that Plaintiff *then knew* to be false.[3] He had every opportunity, in responding to Defendant's summary judgment motion, to demonstrate that/those fact/falsities. This case is, therefore, unlike *Kearney*, which wound up applying the "sham" exception because the district court had improperly faulted the plaintiff for not "do[ing] enough to discover the test results she sought from Defendants." *Kearney*, 590 F.3d at 647-48; *see also id.* at 642 (noting that it "was only after the [earlier] trial that Kearney learned from a school expense itemization report that percolation testing had actually been performed");

---

[3] Plaintiff certainly knew about the alleged forgery and embezzlement by that time. He has not alleged that he had no access to the Disclosure Agreement so as to argue that he had no opportunity to point out to the state court – in opposing the summary judgment motion – Defendant's attorneys' alleged falsehood related thereto.

*Sosa*, 437 F.3d at 940 (explaining why *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) fit within "sham" exception (though *Noerr-Pennington* immunity was not discussed in that case) – the defendants in that case "had failed during the prior litigation to disclose damaging evidence *which was solely in their possession* and had falsely claimed that the evidence did not exist") (emphasis added); *Living Designs*, 431 F.3d at 357 ("After Plaintiffs settled their product liability claims against DuPont, it became clear that DuPont had not revealed to Plaintiffs during discovery damaging test results that indicated that Benlate was indeed contaminated with SUs."); *cf. Freeman*, 410 F.3d at 1185 n.2 (indicating that not every misrepresentation to a court will necessarily invoke the "sham" exception to *Noerr-Pennington* immunity).

In addition, to the extent the Court is to look to whether Defendant's defense in the earlier lawsuit was "objectively baseless," as one Ninth Circuit opinion suggests is appropriate, Defendant actually prevailed on its summary judgment motion. *See Freeman*, 410 F.3d at 1185. Similarly, there obviously is no concern here that Defendant's defense in the earlier litigation was "a concealed attempt to interfere with the plaintiff's business relations." *Id.* (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993)).

In light of the foregoing, the "sham" exception to *Noerr-Pennington* immunity does not apply on these facts, and *Noerr-Pennington* immunity would protect Defendant from Plaintiff's RICO claim based upon alleged falsehoods/omissions Defendant committed in connection with its summary judgment briefing in the earlier case. Although Plaintiff requests an opportunity to amend, neither in connection with the supplemental briefing the Court ordered in the Order, nor in his original (late-filed) Opposition to Defendant's motion, did Plaintiff make any effort to explain how he could add anything to his allegations so as to avoid the *res judicata* impact on the sole primary right he advances in connection with the $4,500 he lost. Because Plaintiff has not even hinted as to how he may do so, the Court concludes that any amendment would be futile. It therefore dismisses Plaintiff's Complaint without leave to amend, and his case with prejudice, for the reasons addressed in the Order and in this present ruling.